# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **JOYCE C. SIZEMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-1275** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Joyce C. Sizemore (hereinafter referred to as "Claimant"), filed an application for SSI on February 11, 2002, (protective filing date), alleging disability as of February 1, 2002, due to borderline intellectual functioning and back problems.[1] (Tr. at 133-45, 153.)  The claims were denied initially and upon reconsideration.  (Tr. at 111-13, 118-20.)  On December 5, 2002, Claimant

---

[1]  This is Claimant's fourth application for SSI, having filed her first application on November 17, 1992. (Tr. at 97.) The claim was denied initially on May 12, 1993, and Claimant did not pursue an appeal. (Tr. at 97.) Claimant filed her second application for SSI on July 24, 1996, which was denied initially and upon reconsideration. (Tr. at 97.) She did not pursue an appeal of the unfavorable decision. (Tr. at 97.) Claimant filed her third application for SSI on December 9, 1999, which application was denied initially and upon reconsideration. (Tr. at 97.) A hearing before an Administrate Law Judge was held on July 25, 2001, and benefits were denied by decision of the Honorable John Murdock dated January 24, 2002. (Tr. at 97-106.)

requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 121.)  The hearing was held on March 1, 2004, before the Honorable Arthur L. Conover. (Tr. at 45-93.)  By decision dated March 15, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-29.)  The ALJ's decision became the final decision of the Commissioner on October 28, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 6-10.) Claimant filed the present action seeking judicial review of the administrative decision on December 6, 2004, pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e),

416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2]Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since her alleged onset date. (Tr. at 20.)  Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of borderline intellectual functioning, obesity, depressive disorder, herniated nucleus pulposus, and generalized anxiety disorder. (Tr. at 22, 28.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22.) The ALJ then found that Claimant had a residual functional capacity for light level work with the following limitations:

> The claimant has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently. She requires a sit/stand option at will. The claimant has a verbal IQ of 72, performance IQ of 78, and full scale IQ of 73. She can read at the sixth grade level, spell at the fifth grade level, and perform aritmetic at the second grade level. The claimant can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. The claimant can never kneel or crawl. She can occasionally balance, stoop, and crouch. The claimant must avoid all exposure to extreme cold, vibration, and heights. She should not wait on the public as customers. The claimant is limited to simple routine work. She should work with objects rather than people. The claimant should work alone or with small groups. She should perform essentially isolated work with only occasional supervision.

(Tr. at 26, 28.)  At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 26.) Nevertheless, at the fifth inquiry, the ALJ determined, on the basis of Vocational Expert [VE] testimony, that Claimant could perform light level jobs such as label remover, garment bagger, and non-postal mail sorter, and sedentary level jobs such as finisher, hand polisher, and jewelry lacquer. (Tr. at 27-28, 29.) On this basis, benefits were denied.  (Tr. at 28-29.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 25, 1976, and was 27 years old at the time of the supplemental administrative hearing.  (Tr. at 27, 54.)  Claimant has an eighth grade, or limited, education. (Tr. at 27, 55, 159.) Claimant has no past relevant work. (Tr. at 26, 61.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence of record and will discuss it further below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in failing to determine that Claimant has a severe mental impairment, (2) the ALJ erred in determining that Claimant's mental impairments did not meet any Listing, (3) the ALJ erred in assessing Claimant's pain and credibility, (4) the ALJ's hypothetical to the VE was inadequate, and (5) the ALJ failed to develop the record. The Commissioner argues that these arguments are without merit and that substantial evidence supports the ALJ's decision.

Analysis

1.  ALJ's Determination of Severe Mental Impairments.

Claimant first alleges that the ALJ erred in finding that her mental impairments were not severe. (Pl.'s Br. at 12.) The Commissioner asserts that this argument is without merit.

To be deemed disabled, a claimant must have an impairment or combination of impairments

which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2002). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id. § 416.921(b)(1)-(6).

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a. First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1)(2002). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e)(2002). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2)(2002). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2002). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4) (2002). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2002). Fourth, if a mental impairment is "severe," the ALJ

8

will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2002).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3) (2002).  The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described  in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2002).

The ALJ noted that Claimant alleged disability due to borderline intellectual functioning and back problems. (Tr. at 20.) He summarized the medical evidence and found that Claimant's borderline intellectual functioning, obesity, depressive disorder, herniated nucleus pulposus, and generalized anxiety disorder were severe impairments within the meaning of the Regulations. (Tr. at 22.) Claimant's allegation that the ALJ found no severe mental impairments therefore, is unfounded. Although she takes issue with the ALJ's failure to find that her low IQ score in and of itself was a severe impairment, the ALJ noted her IQ scores as reported by Sunny S. Bell, M.A., and Kevin W. Adams, M.A., and accommodated her borderline intellectual functioning in the RFC determination by limiting Claimant to only simple, repetitive tasks. (Tr. at 21-22.) Accordingly, the ALJ sufficiently considered and accounted for Claimant's IQ and borderline intellectual functioning in his decision.

9

2. <u>ALJ's Determination that Mental Impairments Did Not Meet any Listing</u>.

Claimant next alleges that the ALJ erred in not finding that her severe mental impairments met a listing at step three of the sequential analysis. (Pl.'s Br. at 9.) She alleges that the ALJ's error resulted in his failure to (1) evaluate accurately the extent of her mental impairments, (2) evaluate properly her subjective complaints, and (3) afford her subjective complaints "appropriate weight." (Pl.'s Br. at 9.) The Commissioner argues that the ALJ's decision is consistent with the medical evidence of record and is supported by substantial evidence.

The ALJ found that Claimant's impairments did not meet or equal in severity the criteria for any listed impairment. (Tr. at 22-24.) The ALJ stated that he had considered listings 12.04 through 12.06, with respect to Claimant's mental impairments. (Tr. at 23-24.) In accordance with the applicable law and Regulations, the ALJ also thoroughly analyzed Claimant's limitations in several broad areas of functioning (cognitive/communicative, motor, social, personal development, and concentration, persistence or pace) and determined that Claimant did not have an impairment which was functionally equivalent in severity to any listed impairment. (Tr. at 23-24.) Claimant does not dispute the ALJ's finding on functional equivalence, and the Court accordingly will not address that issue.

As noted above, at step three of the sequential evaluation process, if a claimant has an impairment that meets or medically equals or functionally equals the requirements of Appendix 1 to Subpart P of the Administrative Regulations No. 4, the claimant is found disabled and awarded benefits. <u>See</u> 20 C.F.R. § 416.924(d)(1). A mere diagnosis of an impairment, however, does not mean that it meets a listed impairment. <u>See id.</u> § 925(d). Rather, a claimant's impairment meets a listed impairment only if it meets all of the requirements of the listed impairment. <u>See</u> <u>Sullivan v.</u>

Zebley, 493 U.S. 521, 530 (1990).

The listings set out at 20 C.F.R. Part 404, Subpart P, Appendix 1 are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each listing begins with an introductory statement describing the disorder, followed by paragraph A criteria (a set of medical findings) and paragraph B criteria (a set of impairment-related functional limitations). See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00 (2002). For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. In other words, a claimant will be found to have a listed impairment when the criteria of both paragraphs A and B of the listed impairment are satisfied. Id. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see also Social Security Ruling (SSR) 83-19 ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment. . . . The level of severity in any particular listing section is depicted by the given set of findings and not by the degree of severity of any single medical finding--no matter to what extent that finding may exceed the listed value."). For a claimant to qualify for benefits by showing that her unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, she must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. See Williams v. Sullivan, 970 F.2d 1178, 1186 (3rd Cir. 1992.) The regulations provide that if a claimant's impairments do not meet or equal the Listings, the Commissioner will assess all functional limitations caused by claimant's impairments. 20 C.F.R. § 416.926a(a) (2002).

The ALJ reviewed and summarized the medical evidence of record, including the results of several IQ tests, in determining that Claimant did not meet or medically equal Listings 12.04-12.06. (Tr. at 23-24.) Sunny S. Bell, M.A., licensed psychologist, evaluated Claimant in September, 2001. (Tr. at 306-10.) Ms. Bell administered the Wechsler Adult Intelligence Scale-III ("WAIS-III") and determined that Claimant had a verbal IQ of 72, a performance IQ of 78, and a full scale IQ of 73. (Tr. at 23, 308.) The scores were deemed valid and Ms. Bell diagnosed borderline intellectual functioning. (Tr. at 311-12.) Ms. Bell further administered the WRAT-3 and determined that Claimant could read at a sixth grade level, spell at the fifth grade level, and perform arithmetic at the second grade level. (Tr. at 23, 309.) Kevin W. Adams, clinic psychologist, evaluated Claimant in April, 2003. (Tr. at 21-22, 465-71.) Mr. Adams also administered the WAIS-III and determined that Claimant had a verbal IQ of 82, a performance IQ of 78, and a full scale IQ of 78. (Tr. at 21-23, 468.) After administering the WRAT-3, Mr. Adams further determined that Claimant could read at a high school level, spell at the fifth grade level, and perform arithmetic at the second grade level. (Tr. at 23, 469.) The scores were deemed valid and Mr. Adams likewise diagnosed Claimant with borderline intellectual functioning. (Tr. at 23, 469.) Despite the borderline intellectual level, the ALJ noted that Claimant was the representative payee for her husband, paid all of the family bills, had a driver's license, and cared for her young child. (Tr. at 23, 57-59.)

Concerning her depressive and generalized anxiety disorders, the ALJ found that Claimant is mildly restricted in her activities of daily living. (Tr. at 23.) The ALJ noted from Claimant's testimony that she cared for her daughter and got her off to school every morning, did some housework and laundry, cooked meals for her family, and watched television. (Tr. at 23.) Based on Claimant's aversion to crowds, the ALJ further found that Claimant had moderate difficulties in

maintaining social functioning. (Tr. at 23.) Finally, the ALJ found that Claimant had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 23.) He noted that Claimant was occasionally forgetful and required several explanations of tasks. (Tr. at 23.) He further found that Claimant had only one episode of decompensation, but that subsequent medical treatment, consisting of counseling and medication, improved her condition. (Tr. at 22-23.) The ALJ also considered the January 23, 2004, psychiatric evaluation performed by George B. Ide, D.O., a clinic psychiatrist, who determined that Claimant had a Global Assessment Functioning ("GAF") level of 55.[3] (Tr. at 22, 474.)

Based upon the foregoing, the Court finds that the ALJ's decision sets forth the medical evidence and facts considered in the step three analysis. As the Commissioner notes, Claimant does not specifically set forth evidence which demonstrates that the ALJ failed to consider any listing level medical evidence. Accordingly, the Court finds that Claimant's argument is without merit and the ALJ's determination that her mental impairments did not meet the Listings is supported by substantial evidence.

3.  Pain and Credibility Assessment

Claimant next argues that the ALJ improperly evaluated her credibility regarding her pain and other limitations. (Pl.'s Br. at 6-7.) The Commissioner argues that the ALJ's analysis was in accordance with the applicable law and Regulations.

---

[3]  The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100.  A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.  20 C.F.R. § 404.1529(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence."  Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (2004).  Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ

15

rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

Claimant argues that the ALJ failed to evaluate carefully "the intensity and persistence" of Claimant's allegations of pain. (Pl.'s Br. at 6.) Claimant does not argue that the ALJ failed to perform properly the two-step analysis, and she does not point to a portion of the evidence of record to help support her argument.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 24.) He noted the two-part test and the appropriate factors for consideration. The ALJ found, with regard to the threshold test, that "[r]esolving all doubts in the claimant's favor . . . claimant has produced evidence of an impairment that could reasonably be expected to cause the alleged symptoms." (Tr. at 24.) The ALJ therefore proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 24-25.) The ALJ noted the requisite factors, and then conducted his analysis in view of them in the opinion. (Tr. at 24-25.)

The ALJ summarized Claimant's allegations of pain, noting that she alleged constant pain in her lower back. (Tr. at 24, 162.) She alleged difficulty in bending, stooping, and standing or lying down. (Tr. at 24, 162.) The ALJ noted that Claimant reported that nothing alleviated her pain. (Tr. at 24, 162.) The ALJ found, however, that Claimant's testimony and written documentation submitted into evidence reflected a greater level of activity than did Claimant's testimony. (Tr. at 24.) The ALJ noted that in written documentation, Claimant reported performing household chores such as dusting furniture, mopping floors, washing dishes, and laundry. (Tr. at 24, 168-69.) Such

16

documents also reflected child care, paying bills, and shopping for food, clothing, and medication,. (Tr. at 24, 73-74, 168-69.) The ALJ noted that Claimant testified that she soaked in hot baths to relieve her pain and was taking pain medications. (Tr. at 24, 71, 162.) The ALJ further noted that Claimant stopped taking injections half-way through the time specified by her physician and never participated in physical therapy. (Tr. at 25, 60, 81-82.) The ALJ noted that the numerous inconsistencies of record reflected poorly on Claimant's overall credibility. (Tr. at 25.)

The ALJ went on to address the medical evidence of record, noting that it did not overcome his doubts as to Claimant's credibility. (Tr. at 25.) The Court has previously addressed some of this evidence. As the Commissioner points out, the ALJ credited many of Claimant's complaints in determining her RFC. Although the state agency medical consultants determined that Claimant was able to perform work at the light level of exertion, the ALJ limited Claimant to a more restricted range of light exertion by requiring a sit/stand option at will and no kneeling or crawling. (Tr. at 26.) The ALJ found that Claimant was also limited nonexertionally, after considering her limited education and complaints of maintaining social functioning in crowds and with supervisors. (Tr. at 26.) He thus further limited Claimant to work requiring contact with objects as opposed to people and no work involving waiting on the public as customers, work requiring only simple, routine tasks, work requiring occasional climbing of ramps and stairs, and work with no temperature extremes, heights, or vibration. (Tr. at 26.) The ALJ further limited Claimant to work requiring her to work alone or with small groups and work with only occasional supervision. (Tr. at 26.)

Claimant alleges, however, that the ALJ erred in not giving any weight to the June, 2003, opinion of Kevin Adams, M.A., and the July, 2003, opinion of Manuel C. Barit, M.D., both treating

17

sources. (Pl.'s Br. at 7, 12-13.) The Commissioner argues that Mr. Adams examined Claimant on one occasion and, therefore, is not entitled to "treating source" status. (Def.'s Br. at 12.) Nevertheless, the Commissioner further argues that the opinions address ultimate issues of the case, which decisions are reserved to the Commissioner. (Def.'s Br. at 12.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2) (2002). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2002). The opinion of a treating physician must be weighed against the record as a whole when determining

18

eligibility for benefits.  20 C.F.R. § 416.927(d)(2) (2002). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 416.927(d)(2)-(6).

The RFC determination is an issue reserved to the Commissioner.  See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).  Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2002). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

Mr. Adams conducted a psychological evaluation of Claimant on April 21, 2003. (Tr. at 465-71.) This examination was the only evaluation of Claimant by Mr. Adams, and therefore, he is more appropriately considered a one-time examiner, not a treating physician. See 20 C.F.R. § 416.927(d) (2004). On examination, Mr. Adams observed that Claimant's concentration was erratic, that she appeared to tire easily, and experienced auditory hallucinations when depressed. (Tr. at 468-69.) Claimant reported that she felt worthless and hopeless most of the time and had suicidal ideations. (Tr. at 467.) She further reported that she believed other people were watching, talking, and laughing about her. (Tr. at 467.) Based on the foregoing, Mr. Adams opined that due to the severity of

19

Claimant's depression and anxiety, she was "unable to perform repetitive daily routines such as work related activities and the activities of daily living." (Tr. at 470.) Based on the evidence of record, including a State agency medical consultant's opinion, the ALJ determined that Claimant's activities of daily living were only mildly restricted. (Tr. at 23.) Essentially, the ALJ determined that Claimant's psychological condition was stable. Claimant emphasizes however, that her condition was stabilized only because she was on medications and under treatment. (Pl.'s Br. at 7.) As the Commissioner notes, Claimant has acknowledged that her psychological condition was stable, and therefore, the ALJ's decision that she was not disabled therefrom is supported by substantial evidence. Furthermore, because Mr. Adams made an RFC determination, a decision that is reserved to the Commissioner, the ALJ properly gave his opinion no weight.

With respect to her physical condition, the medical records indicate that Claimant was treated by Dr. Barit from May 8, 2003, through August 22, 2003, for her low back condition. (Tr. at 444-50.) On July 7, 2003, Dr. Barit opined that Claimant should not lift in excess of ten pounds or bend and stoop due to a herniated disc condition. (Tr. at 445.) The ALJ found that Dr. Barit's opinion was not supported by the treatment record and objective findings. (Tr. at 25.) Furthermore, the ALJ found that his opinion was inconsistent with the findings of Gary Craft, M.D. (Tr. at 25.) As the Commissioner notes, Claimant does not allege legal error with the ALJ's factual findings. Rather, it appears that Claimant is alleging that Dr. Craft, having examined Claimant on only one occasion, did not consider any limitations resulting from her "morbid obesity." (Pl.'s Br. at 12.) The Commissioner argues that Claimant's allegation is without merit.

20

On July 10, 2002, Dr. Craft performed a one-time medical evaluation of Claimant. (Tr. at 313-17.) On exam, Dr. Craft observed that Claimant was "fully ambulatory and carried her weight very well and was free of any acute distress." (Tr. at 314.) The examination of her back was negative; forward motion was slightly decreased, station and gait were normal, squatting was fair, and she was able to toe-heel walk. Although Dr. Craft was a one-time examiner, his opinion is supported with these objective findings. Dr. Barit however, wrote his "opinion" on what appears to be a prescription pad and is not supported by any objective findings. (Tr. at 445.) While an MRI report indicated that Claimant suffered from a herniated disc, Dr. Barit's treatment notes do not identify any limitations resulting therefrom, other than Claimant's subjective complaints of pain. As the Commissioner notes, Claimant testified that she believed she was "at the right weight." (Tr. at 61.) Furthermore, based on the VE's testimony, in addition to identifying jobs at the light level of exertion, the ALJ also identified sedentary jobs that Claimant was capable of performing which consider Dr. Barit's ten pound maximum lifting amount. Accordingly, the Court finds that the ALJ's decision to afford Dr. Barit's July 7, 2003, opinion no weight is supported by substantial evidence.

Upon a careful review of the record, the Court finds the ALJ's analysis of Claimant's pain and credibility proper and in accordance with the applicable law and Regulations. The ALJ did not find that Claimant suffered no symptoms; he merely found that the symptoms were not as severe as Claimant alleged. (Tr. at 24-25.) The ALJ found that Claimant could perform less than light work with additional limitations, and therefore took into account some of Claimant's complaints. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence.

4.  Hypothetical Question to the VE

Claimant next asserts that the ALJ's hypothetical question to the VE was improper because it failed to reflect accurately the nature and severity of her impairments. Claimant specifically argues that the hypothetical question failed to credit Claimant's subjective complaints of pain and other limitations. The Commissioner asserts that this argument is without merit.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.  Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989).  "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity."  Id. at 51.  Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In his hypothetical question to the VE, the ALJ included all of Claimant's impairments that were supported by the record. The ALJ asked whether a person of Claimant's age, education, past relevant work experience and residual functional capacity, who should not climb ladders, ropes, or scaffolds, balance, stoop, crouch, kneel, or crawl, avoid vibrations and heights, should not wait on the public as customers, should work with objects as opposed to people, works alone or in very small

22

groups, works isolated with occasional supervisory contact, and is limited to simple, routine, tasks. (Tr. at 90-91.) In response to the ALJ's hypothetical, the VE responded that such person could perform the jobs of label remover, garment bagger, and non-postal mail server. (Tr. at 91.) In response to further questioning, the VE testified that if the hypothetical person was limited to lifting no more than ten pounds, with all other variables remaining the same, she could perform sedentary work including finisher, hand polisher, and jewelry lacquerer. (Tr. at 91.) However, taking into consideration a severe level of pain and inability to concentrate on simple tasks, with frequent, irregular breaks, the VE was unable to identify any jobs. (Tr. at 92.)

The Court finds that the ALJ's hypothetical question to the VE was proper and the ALJ's decision is supported by substantial evidence. The Claimant raises only the fact that the ALJ did not credit her subjective complaints of pain and other limitations. The Court has already upheld the ALJ's determination regarding Claimant's pain and credibility, and this issue need not be further addressed. The hypothetical question included the severe impairments that were supported by the record, and the ALJ did, in fact, take into consideration some of Claimant's subjective complaints.

5. Duty to Develop the Record

Finally, Claimant briefly argues that the ALJ failed to develop properly the record in the instant case with respect to her impairments by failing to have a medical expert present at the administrative hearing. (Pl.'s Br. at 12.) The Commissioner asserts that this argument is without merit.

The Court finds Claimant's argument on this point unavailing. Although an ALJ does have a responsibility to help develop the evidence, the evidence in the instant case was adequate for the

23

ALJ to make a determination. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Further, it is Claimant's responsibility to prove to the Commissioner that she is disabled.  20 C.F.R. § 416.912(a) (2002).   Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c). Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant has been represented by counsel in this case throughout the proceedings. Claimant at no time requested a consultative examination or argued that she was unable to obtain medical records necessary to complete the file. Additionally, the ALJ provided counsel an opportunity to present evidence after the hearing, and some evidence was presented at that time.

As the Commissioner points out, there was ample evidence in the existing record upon which the ALJ could base his decision, including treatment notes from various providers (Tr. at 167-91, 214-65, 276-80, 283-313, 326-49, 350-63), consultative medical and psychological examinations (Tr. at 198-200, 192-97, 314-19) and opinions of state agency medical experts stating that Claimant's impairments were not disabling. (Tr. at 201-09.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's argument in this regard is very generalized and the Court finds that it does not warrant further analysis. Claimant's argument is therefore without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Order to counsel of record.

ENTER: March 31, 2006.

R. Clarke VanDervort
United States Magistrate Judge